IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES,

     Plaintiff,

v.                                                                    Case No. 25-mj-1426 GBW

ELISA AZUCENA JOSE-ALONSO,

     Defendant.

## ORDER DISMISSING CHARGES

### I.    PROCEDURAL POSTURE

The United States has filed a Criminal Complaint against Defendant alleging

three misdemeanor crimes: Entry Without Inspection in violation of Title 8 U.S.C. §

1325; Violation of a Security Regulation in violation of Title 50 U.S.C. § 797; and

Entering Military Property for an Unlawful Purpose in violation of Title 18 U.S.C. §

1382.  *See doc. 1.*  The court has sworn the agent to the factual allegations of the

complaint and conducted an initial appearance.  *See doc. 3.*  Counsel from the Federal

Public Defender's Office represented Defendant for the purposes of the initial

appearance and orally moved for dismissal of the Title 50 and 18 charges.  *See* Criminal

Clerk's Minutes, *United States v. Lucas-Curiel*, No. 2:25-mj-01417 GBW, *doc. 3* (D.N.M.

May 12, 2025) (oral motion to dismiss for all such charges on docket); *See* Criminal

Clerk's Minutes, *United States v. Campos-Vega*, No. 2:25-mj-01477 GBW, *doc. 3* (D.N.M.

1

May 13, 2025) (same); *See* Criminal Clerk's Minutes, *United States v. Batres-Alvarado*, No. 2:25-mj-01527 GBW, *doc. 3* (D.N.M. May 14, 2025) (same).  Even if a motion had not been made, "anyone arrested for a crime without formal process, whether for felony or misdemeanor, is entitled to a magistrate [judge]'s review of probable cause…." *Atwater v. City of Lago Vista*, 532 U.S. 318, 352 (2001) (citation omitted).[1]  This review requires that the court determine that the facts alleged in "the complaint establish probable cause to believe that an offense has been committed and that the defendant committed it[.]".  Fed. R. Crim. P. 4.  Having concluded its probable cause review in this case, the court finds that the facts alleged in the complaint do not establish probable cause for either the 50 U.S.C. § 797 or 18 U.S.C. § 1382 charge.[2]  As such, those charges will be dismissed without prejudice.

---

[1] Indeed, the review is required within 48 hours of arrest.  While the Court took longer to finish the review in this case, it had, within that time period, concluded that probable cause existed as to the Entry Without Inspection charge which supported a warrantless arrest.

[2] Notwithstanding the United States' belated objection to the Court's order for briefing, the Court has considered its arguments as well as those of the Federal Public Defender.  *See In the Matter of: MISDEMEANOR CHARGES PURSUANT TO 50 U.S.C. § 797 AND 18 U.S.C. § 1382*, No. 2:25-mc-00019 GBW, *doc. 4* ("USA Brief"), *doc. 5* ("FPD Brief"), *doc. 6* ("USA Objection") (D.N.M. May 2025).  While the Court need not address every argument in the United States' Objection, given its remarkable tone and content, some points must be made.  Incredibly, this histrionic filing is in response to the Court's order for the United States Attorney's Office to file a brief on a legal question about a criminal charge it had brought.  Notably, the United States made no timely objection to the briefing order.  In fact, United States filed its brief before apparently realizing days later that the mere request for briefing was "an improper exercise of the Court's authority" and an "extraordinary departure from … foundational principles [ ]." *USA Objection* at 2-3.  According to the government, the briefing order was in error because it was "issued without any prompting from any party." *Id*. at 2.  However, as noted above and as the government must be aware, this Court has a *sua sponte* obligation to conduct a probable cause review of all charges involving a warrantless arrest.  Moreover, this Court has the independent obligation in any guilty plea proceeding to determine whether the proffered factual basis satisfies the elements of the crime.  Thus, for both probable cause review and the Court's Rule 11 obligations, conclusions about the requisite elements of charged crimes are essential.  The Court simply wanted to provide the government and defense

## II.    TITLE 50 U.S.C. § 797

This statute makes it a crime to "willfully violate[ ] any defense property security regulation."  50 U.S.C. § 797.  Specifically, in the instant case, Defendant is charged with violating a regulation promulgated by the military commander at Fort Huachuca prohibiting unauthorized entry into the NM National Defense Area ("NMNDA") which was created out of the "Roosevelt Reservation."  *Doc. 1*.  Under these circumstances, outside of *mens rea*, the elements of the crime are: (1) the NMNDA is lawfully regulated by a "defense property security regulation;" (2) such regulation prohibits unauthorized entry; (3) defendant entered the NMNDA; and (4) defendant's entry was unauthorized. As quoted above, Defendant must "willfully violate" the regulation.  Thus, the Court must determine how that "willfully" requirement applies here.

---

counsel an opportunity to weigh in on that analysis.  Regardless, the government contends that this briefing would lead to an improper advisory opinion.  However, as should be clear from this Order, the Court is applying its legal analysis to particular cases.  To be sure, the Court's briefing order was not filed in a particular case, but instead in a miscellaneous matter.  Indeed, to fulfill its probable cause review, the Court could have filed the briefing order in the hundreds of cases filed by the government pursuant to the two "military trespass" statutes.  Nonetheless, this attempt at efficiency did not constitute constitutional error.  This conclusion is particularly true when the factual allegations in the complaints in question are virtually identical with respect to the two "military trespass" charges across hundreds of cases.  While the Court appreciates the government's newfound concern about the "particular facts of any case," the government's cut-and-paste approach to factual allegations in the complaints allows this Court to apply the legal analysis contained herein across every criminal complaint charging these crimes filed thus far and still pending.  Finally, the government objects to the Court's briefing order because it contends it would be improper for the Court to critically examine pending Informations.  Even assuming that the caselaw regarding challenging indictments cited by the government is fully applicable to informations which have not passed the review of a grand jury, it would have no bearing on the instant order which addresses a criminal complaint in a case where no information has been filed.

The Federal Public Defender, who represented Defendant at the initial appearance, has argued that "the *mens rea* requirement of § 797 plainly requires knowledge of the security regulation at issue and an act in defiance of that regulation for some nefarious purpose." *FPD Brief* at 4.  Put another way, they argue that "not only does the term 'willful' unambiguously require a culpable state of mind, but that culpable state of mind must also be specifically directed toward committing a defense property security regulation." *Id.* at 5.  There is no citation for this proposition, and it contradicts Supreme Court precedent on the definition of "willfulness."

The primary case on the meaning of "willfulness" in criminal statutes is *Bryan v. United States*, 524 U.S. 184 (1998).  As the Court explained, the

> word "willfully" is sometimes said to be "a word of many meanings" whose construction is often dependent on the context in which it appears. Most obviously it differentiates between deliberate and unwitting conduct, but in the criminal law it also typically refers to a culpable state of mind. … As a general matter, when used in the criminal context, a "willful" act is one undertaken with a "bad purpose."  In other words, in order to establish a "willful" violation of a statute, "the Government must prove that the defendant acted with knowledge that his conduct was unlawful."

*Id*. at 191 (quoting *Spies v. United States*, 317 U.S. 492, 497 (1943)).  Of course, one could conclude that "acting with knowledge that one's conduct is unlawful" means that a defendant must indeed know the law.  However, the Supreme Court expressly rejected this interpretation.  The Court explained that a statutory willfulness requirement "does not [ordinarily] carve out an exception to the traditional rule that ignorance of the law is

4

no excuse; knowledge that the conduct is unlawful is all that is required." *Id*. at 195-96.

The only exception to the traditional rule "involve[s] highly technical statutes that

present[ ] the danger of ensnaring individuals engaged in apparently innocent

conduct." *Id*. at 195 (citing *Cheek v. United States*, 498 U.S. 192 (1991) and *Ratzlaf v.

United States*, 510 U.S. 135 (1994)).  This court does not find that 50 U.S.C. § 797 as

applied here is a statute which would fit within this exception.  Notwithstanding the

fact that the jurisdictional prerequisites to the crime – military property with a security

regulation – may be legally intricate, the crime simply outlaws trespass on property

administered by the military.  Not only is this crime straightforward, its application

along the border where individuals are allegedly attempting to enter the United States

illegally does not risk ensnaring individuals engaged in apparently innocent conduct.

Therefore, this court concludes that, to establish a willful violation of a security

regulation, the government need not show knowledge of the regulation, but only

knowledge that the conduct is unlawful.

The United States argues that this knowledge can be sufficiently shown by

Defendant's simultaneous illegal entry into the United States in violation of 8 U.S.C. §

1325.  *USA Brief* at 6-8.  In response, the Federal Public Defender contends that the

United States has failed to cite any cases which stand for the proposition that "general

intent to commit a completed crime can form the basis of any willfulness and/or *mens*

*rea* to commit a trespassing crime." *FPD Brief* at 6 n.4. Having reviewed the cases cited

by the parties, this court agrees with the United States.

First, the court finds no authority to support the distinction the Federal Public

Defender attempts to make here. In *Bryan*, the Supreme Court required only

"knowledge that his conduct was unlawful." 524 U.S. at 191. There was no discussion

of whether that knowledge was limited to another specific intent crime or whether it

was completed or inchoate. Counsel provides no authority for making such a

distinction and the court has found no cases interpreting willfulness which would

support it. In fact, courts routinely support jury instructions on "willfulness" which

state simply that the government must establish that the defendant knew his conduct

was "unlawful." *See United States v. Wyatt*, 964 F.3d 947 (10th Cir. 2020) (remanding

two counts which required willfulness for retrial while implicitly endorsing the

willfulness instruction which had been given by the trial court); *United States v.*

*Robertson*, 709 F.3d 741, 745-46 (8th Cir. 2013).

Second, the analysis in *Bryan* supports the proposition that the defendant's

knowledge that his particular conduct was unlawful in some fashion would constitute

willfulness. In *Bryan*, the defendant was convicted of willfully dealing in firearms

without a federal license. 524 U.S. at 186. There was "no evidence that he was aware of

the federal law that prohibits dealing in firearms without a federal license." *Id*. at 189.

The Court, however, found that willfulness was established because the evidence

showed defendant "knew that his conduct was unlawful." *Id*. Specifically, the Court

pointed to defendant's (i) use of straw purchasers; (ii) promises to purchasers that he

would shave off serial numbers; and (iii) practice of selling guns on street corners. *Id*. at

189 n.8. As the dissent noted, when the Court accepted "only [a] 'general' knowledge of

illegality," it did "not even limit … the universe of relevant laws to federal *firearms*

statutes." *Id*. at 202 (Scalia, J., dissenting). Putting a fine point on it, Justice Scalia

worried that, according to the Court's holding, "it ought to suffice if [defendant] knew

that the car out of which he sold the guns was illegally double-parked, or if, in order to

meet the appointed time for the sale, he intentionally violated Pennsylvania's speed

limit on the drive back from the gun purchase in Ohio." *Id*. This Court is confident that

*Bryan* does not stand for such a broad a proposition and will instead assume that the

apparent unlawfulness of a defendant's conduct must bear a reasonable relationship to

the crime the defendant is accused of willfully violating. That standard is met here.

Defendant is alleged to have crossed an international border at a location (or place) not

designated as an official port of entry -- a crime that, in essence, functions as a national

trespass statute. Moreover, such illegal entry is generally intended to avoid detection

by law enforcement and will almost always occur over property whose ownership and

control the person neither knows nor considers. Consequently, the unlawfulness of

illegal entry under 8 U.S.C. § 1325 is reasonably related to the crime of military trespass

under 50 U.S.C. § 797.

However, the conclusion that Defendant's knowledge of unlawfully entering the United States may be sufficient to establish knowledge of unlawful conduct under 50 U.S.C. § 797 does not end the *mens rea* inquiry.  Whether and how a criminal statute requires the government to prove the *mens rea* of a defendant is a question of congressional intent.  *See Rehaif v. United States*, 588 U.S. 225, 228 (2019).

> In determining Congress' intent, we start from a longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding "each of the statutory elements that criminalize otherwise innocent conduct."  We normally characterize this interpretive maxim as a presumption in favor of "scienter," by which we mean a presumption that criminal statutes require the degree of knowledge sufficient to "make a person legally responsible for the consequences of his or her act or omission."

*Id*. at 228-29 (internal citations omitted).  This presumption of scienter is generally applied to all but a statute's "jurisdictional elements."  *Id*. at 229-30.  "Jurisdictional elements do not describe the 'evil Congress seeks to prevent,'" but instead establish the authority of the government to regulate the conduct.  *Id*. at 230.  As applied here, the first two elements of the 50 U.S.C. § 797 charge fit into the "jurisdictional elements" category—that NMNDA is lawfully regulated by a "defense property security regulation;" and that such regulation prohibits unauthorized entry.  Together, these elements establish the legal and jurisdictional basis for this charge.  Essentially, those elements are the "law" Defendant is accused of violating and, as explained in *Bryan*, "ignorance of the law is no excuse" outside of highly technical statutes.  524 U.S. at 196.

That leaves the final two elements of the 50 U.S.C. § 797 crime as applied here –

that defendant entered the NMNDA; and that defendant's entry was unauthorized.

The court will apply the statute's "willfully" *mens rea* requirement to both these

elements. *See Rehaif*, 588 U.S. at 229-31 ("[B]y specifying that a defendant may be

convicted only if he 'knowingly violates' § 922(g), Congress intended to require the

Government to establish that the defendant knew he violated the material elements of §

922(g)."). As detailed above, Defendant's intent to illegally enter the United States can

satisfy the "willfully" requirement that Defendant knew that his conduct was unlawful

under 50 U.S.C. § 797. However, that knowledge is not the only requirement of the

"willfully" *mens rea*.

This court again returns to *Bryan* which defined "willfully" in comparison to the

*mens rea* requirement of "knowingly." 524 U.S. at 191-96. The *Bryan* Court explained

that,

> unless the text of the statute dictates a different result, the term
> "knowingly" … requires proof of knowledge of the facts that constitute the
> offense. … **More is required, however,** with respect to [ ] conduct … that is
> only criminal when done "willfully." [For such the] jury must find that the
> defendant … acted with knowledge that his conduct was unlawful.

*Id*. at 193 (emphasis added). In short, to establish willfulness, the government must

show "knowledge of the facts that constitute the offense" **and** "knowledge that his

conduct is unlawful." *Id*. (emphasis added). While the government's allegations in the

instant case may satisfy the requirement of understanding that the conduct was

unlawful, they fail to establish knowledge of the facts that constitute the offense.

As stated above, the government must show that Defendant entered the

NMNDA and that Defendant's entry was unauthorized.  Therefore, knowledge of the

facts that constitute that offense includes knowledge that the defendant has entered the

NMNDA.  Requiring knowledge of the entry is also consistent with Congressional

intent given the statute's requirement that "the regulation … shall be posted in

conspicuous and appropriate places."[3]  50 U.S.C. § 797(b).  As to knowledge, the

Criminal Complaint makes no significant allegations saying only that, after Defendant's

apprehension in this case, "U.S. Border Patrol provided Defendant with a written notice

in Spanish that any unauthorized entry into this restricted area was prohibited and

subject to federal prosecution."  *Doc. 1* at 2-3.  While this fact may have some relevance

in a future case, it of course provides no facts from which one could reasonably

conclude that the Defendant knew he was entering the NMNDA on this occasion.

Consequently, the Criminal Complaint fails to establish probable cause to believe that

Defendant knew he/she was entering the NMNDA.  As the court has held that such

---

[3] Notwithstanding the court's conclusion that this provision supports the requirement of knowledge of entry, the court is persuaded by the cases cited by the government that posting is not an independent element of the offense.  *See United States v. Strong*, 724 F.3d 51, 57-58 (1st Cir. 2013); *United States v. Irby*, 269 Fed. App'x 246, 248-29 (4th Cir. 2008) (per curiam).

knowledge is an essential element of the 50 U.S.C. § 797 charge brought against

Defendant, that charge fails and must be dismissed.

### III.    TITLE 18 U.S.C. § 1382

This statute makes it a crime to "go[ ] upon any military … reservation … for any

purpose prohibited by law or lawful regulation…."  18 U.S.C. § 1382.  The basic

elements of the crime are not hidden – (1) a person "goes upon" a military reservation;

and (2) does so for any unlawful purpose.

As both the United States and the Federal Public Defender spend considerable

time on the second element, the court will begin there.  The court agrees with the

briefing from both counsel that violations of the relevant paragraph of 18 U.S.C. § 1382

fall into two categories.  First, a defendant can "go[ ] upon" military property for a

purpose that is unlawful for reasons apart from the entry itself.  *See, e.g., United States v.*

*Allen*, 924 F.2d 29 (2d Cir. 1991).  Second, a defendant violates the same paragraph by

"go[ing] upon" restricted military property without authorization.  In such a case, the

unauthorized entry itself can provide the unlawful purpose.  *See, e.g., United States v.*

*Parrilla Bonilla*, 648 F.2d 1373 (1st Cir. 1981).

The United States argues that Defendant's case falls into the first category.

Under this theory, Defendant entered the military property for the purpose of entering

the United States without inspection as prohibited by 8 U.S.C. § 1325.  Notwithstanding

11

the contrary arguments of the Federal Public Defender, the court broadly agrees with

the United States on this point.  As alleged in the Criminal Complaint, the NMNDA

entered by Defendant is contiguous to and parallel with the international border

between the United States and Mexico.  The Criminal Complaint further alleges that

Defendant entered the NMNDA in the process of illegally entering the United States at

a place quite distant from the nearest Port of Entry.  *See* 8 U.S.C. § 1325(a)(1).[4]  For the

purposes of probable cause, it is also reasonable to conclude that Defendant was

intending to elude any examination by entering the United States in the location he

chose.  *See* 8 U.S.C. § 1325(a)(2).  Under these circumstances, the Complaint establishes

probable cause to believe that Defendant's entry and presence in the NMNDA was for

an unlawful purpose.

    The court now turns to the first element – "goes upon" the military reservation.

Unlike the 50 U.S.C. § 797 charge, the statute contains no comprehensive *mens rea*

requirement.  Instead, the statute contains a distinct specific intent requirement which

adds to the first element.  *See, e.g.*, 21 U.S.C. § 841(a) ("[I]t shall be unlawful for any

---

[4] The Federal Public Defender argues that, at "a bare minimum, the purposeful requirement of 18 U.S.C. § 1382 requires the Government to prove an additional element beyond what is required under 8 U.S.C. § 1325; that the undocumented person did in fact know, for certain, that they are an 'alien' as that term is used under 8 U.S.C. § 1325." *FPD Brief* at 11.  The Court disagrees given that it is unlawful even for a United States citizen to enter the United States at a place not designated for entry.  *See* 19 U.S.C. § 1459; *see also United States v. Nunez-Soberanis*, 406 F. Supp. 3d 835, 843-44 (S.D.Cal. 2019) (concluding that United States citizen would be subject to at least civil penalties for entering at a place not designated for entry).

person to knowingly or intentionally … to possess with intent to … distribute … a

controlled substance….").  Thus, the court must first determine whether there is any

scienter requirement with respect to the "goes upon" element.  The United States argues

that, as long as the specific intent of the second element is met, no additional *mens rea* is

necessary.  *USA Brief* at 11.

As quoted above, the Supreme Court has held that we presume "that Congress

intends to require a defendant to possess a culpable mental state regarding each of the

statutory elements that criminalize otherwise innocent conduct." *Rehaif*, 588 U.S. at 228-

29 (quotations omitted).  Consequently, we presume "that criminal statutes require the

degree of knowledge sufficient to make a person legally responsible for the

consequences of his or her act or omission."  *Id*. at 229 (quotations and citations

omitted).  This presumption applies "even when Congress does not specify any scienter

in the statutory text," except as a statute's "jurisdictional elements."  *Id*. at 229-30.

Certainly, the sole *actus reus* of this crime – going upon the military property – is not a

mere jurisdictional element.  Consequently, the presumption of scienter applies.  This

general presumption is bolstered by the fact that the entry ("goes upon") is the only act

elementally required from a defendant committing this crime.  Finally, the context of 18

U.S.C. § 1382 supports a knowledge requirement for the "goes upon" element.  By their

nature, military reservations are generally obvious and well-marked.  However, in

many circumstances, public roads surrounding a military reservation pass through and

are within the formal boundaries of the military property.  *See, e.g. United States v. Apel*,

571 U.S. 359, 361-63 (2014) (Pacific Coast Highway passes through and is part of

military property of Vandenberg Air Force Base).  Consequently, individuals could

easily enter military property without being aware that they had crossed a meaningful

boundary assuming no signs were posted.  If a person were driving along such a road

intending to commit a crime in the next town, they would be guilty of a 18 U.S.C. § 1382

crime by the government's logic.  In fact, they would be guilty even if they never

committed the crime when they arrived at the next town and thus had never engaged in

any knowingly culpable conduct.  The absurdity of such a result strongly suggests that

Congress intended only to criminalize the "go[ing] upon" in 18 U.S.C. § 1382 if it was

done knowingly.

     The United States argues that, only in the second category of 18 U.S.C. § 1382

cases – the alleged unlawful purpose is unauthorized entry itself – should it have to

establish knowledge.  The United States is correct that, in this second category, it must

prove that the defendant knew they were prohibited from entering.  *See, e.g., Parrilla*

*Bonilla*, 648 F.2d at 1377; *United States v. Cottier*, 759 F.2d 760, 762 (9th Cir. 1985); *United*

*States v. Hall*, 742 F.2d 1153, 1154-55 (9th Cir. 1984); *United States v. Floyd*, 477 F.2d 217,

224 (10th Cir. 1973).  But knowledge that they were specifically or generally prohibited

is not the only element the government must prove.  As the *Floyd* court affirmed, it

"becomes a matter of proof as to whether the Defendants were [prohibited] persons and

intended to enter the base knowing that they were so prohibited." 477 F.2d at 224.

Thus, under *Floyd*, three elements must be established to prove the second category of

18 U.S.C. § 1382 offenses: (i) defendant was prohibited from entering the base; (ii)

defendant intentionally entered the base; (iii) defendant knew they were prohibited

from entry. Requiring an intentional entry means that the defendant must know they

were entering the military property. Unsurprisingly, in the other cases cited by the

United States where § 1382 convictions were upheld, the facts clearly demonstrate that

the respective defendant knew they had entered the military property AND knew they

were prohibited from doing so. *See Cottier*, 759 F.2d at 762 (defendant apprehended

inside area enclosed by barbed wire fence); *Hall*, 742 F.2d at 1154 (defendant

apprehended on base which was closed and fenced-in); *cf. Parrilla Bonilla*, 648 F.2d at

1377 (expressing great concern about the lack of knowledge given that defendants

entered an area on the base "without any visible boundary marking" while reversing

the convictions on other grounds). Indeed, not requiring knowledge of entry would

again lead to absurd and unfair results. For example, an individual, knowing they were

prohibited from entering a military base, who steps on land he does not know is part of

that base would be guilty without having any culpable intent. This conclusion that

knowledge of entry is required for the second category of 18 U.S.C. § 1382 cases

supports, rather than undermines, the court's conclusion that knowledge that one is

entering the military property is an element under both categories.

For the same reasons described above, the Criminal Complaint fails to establish probable cause to believe that Defendant knew he/she was entering the NMNDA. Given the lack of probable on this essential element, the 18 U.S.C. § 1382 charge fails and must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that the factual allegations in the Criminal Complaint fail to establish probable cause on an essential element of Violation of a Security Regulation in violation of Title 50 U.S.C. § 797 and Entering Military Property for an Unlawful Purpose in violation of Title 18 U.S.C. § 1382.  Therefore, the Court DISMISSES WITHOUT PREJUDICE those charges.

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE

16